**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| EVERYTHING FOR LOVE.COM, INC., a Nevada corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>TENDER LOVING THINGS, INC., d/b/a The Happy Company, a California corporation,<br><br>    Defendant.<br><br>TENDER LOVING THINGS, INC., d/b/a The Happy Company, a California corporation,<br><br>    Counter-claimant,<br><br>vs.<br><br>EVERYTHING FOR LOVE.COM, INC., a Nevada corporation,<br><br>    Counter-defendant. | No. CIV 02-2605-PHX-EHC<br><br>**ORDER** |

    Pending before the Court is Defendant Tender Loving Things, Inc.'s (TLT) Motion to Stay Pending Reexamination (Dkt. 184) and Defendant TLT's Motion to Set Mandatory Settlement Conference (Dkt. 197). The Motions are fully briefed.

//

//

**Factual Background**

Plaintiff / Counter-defendant ("Plaintiff") is in the business of selling, among other things, a head massaging device as described in Patent 6,450,980 ("Patent '980"), a patent held by Plaintiff. Plaintiff alleges that Defendant / Counter-claimant ("Defendant") had infringed on Patent '980 by selling the same device.

Plaintiff and Defendant, through their principals, originally met at a trade show in July of 2000. Plaintiff showed Defendant a massage device at the trade show. Plaintiff told Defendant that a patent was pending on the device, and asked if Defendant would be willing to produce the device so that Plaintiff could sell it. The parties entered into such an arrangement: Defendant produced the massage device and Plaintiff sold it.

Before Plaintiff met Defendant at the trade show, Plaintiff had met third party Dwayne Lacey in 1999. In 1998, Lacey had created and produced a head massaging device and had obtained an Australian patent for one incarnation of the device. In March of 1999, Plaintiff met with Lacey. Plaintiff proposed that Plaintiff purchase Lacey's product for resale. Lacey agreed. Plaintiff purchased 702 units of Lacey's massage device on May 16, 1999 and another 702 units on May 29, 1999. On June 18, 1999, Lacey filed a patent application with the United States Patent and Trademark Office ("PTO") for a head massage device.[1] On October 30, 2001, Lacey acquired a U.S. patent on the device under Patent #6,309,365 ("Patent '365").

On July 21, 2000, during the same month Defendant met Plaintiff at the trade show, Defendant submitted an application to the PTO for a patent on a head massage device.

After Plaintiff and Defendant met at the trade show and entered into their arrangement, various disputes arose. The disputes devolved into three legal actions. During this time, Defendant entered into a relationship with Lacey, whose U.S. patent issued on

---

[1] The parties dispute whether this device is similar to or the same as the device under the Australian patent.

October 30, 2001, whereby Defendant began to manufacture and sell a similar head massage device under its own trademark under an exclusive patent license arrangement with Lacey.

Plaintiff continued to sell its own device through another manufacturer.

On January 23, 2002, Plaintiff, Defendant, and Lacey entered into a settlement agreement. The agreement provided that "[Defendant] will be the exclusive manufacturer of head massage devices under US Patent #6309365 ['365 Patent], for delivery to and sale by [Plaintiff]." Plaintiff was to pay royalties to both Defendant and Lacey.

After multiple applications (beginning on July 21, 2000),[2] Plaintiff was granted a U.S. patent on its head massaging device. The patent issued on September 17, 2002 under Patent #6,450,980 ("Patent '980"). The patent examiner had the '365 patent before him in considering Plaintiff's application. Plaintiff is now suing for patent infringement of the '980 patent.

**Procedural Background**

On March 25, 2005, the Court granted in part and denied in part the parties' Motions for Summary Judgment. (Dkt. 154.) The case was set for trial on August 30, 2005. On August 22, 2005, the Court held a pretrial conference. At that conference, the Court was

---

[2]On November 29, 2001, the Patent Examiner rejected claim 1 of the Plaintiff's application as "generic to a plurality of disclosed patentably distinct species" and required Plaintiff to elect a particular embodiment of the device.

On January 25, 2002, the Patent Examiner rejected most of the claims as anticipated by the '365 patent, or obvious in light of another patent unrelated to this case, stating that the '365 patent "shows all the structural and functional limitations [of Plaintiff's device] . . . except for the particulars of the handle."

On March 20, 2002, Plaintiff resubmitted the application, amending several claims, and stating that "the so-called handle portion shown and described in Lacey does not include a hollow body or an apertured end cap that is affixed to a hollow body."

On June 3, 2002, the Patent Examiner again reject the claims. Plaintiff submitted an amendment on June 11, 2002.

On June 24, 2002, the Patent Examiner issued his Notice of Allowance, which stated in an Amendment that the patent was allowed because "the prior art of record does not show flexible finger end portions being secured in the tubular body and the means for securing as substantially claimed by the applicant."

On September 17, 2002, the PTO issued the '980 patent to Plaintiff.

- 3 -

1 advised that the parties were continuing to negotiate toward a settlement, and the trial was
2 vacated. (Dkt. 176.) When settlement discussions failed (Dkt. 178), third party Dwayne
3 Lacey decided to institute reexamination proceedings of Plaintiff's '980 patent at the Patent
4 and Trademark Office. Defendant's Motion to Stay, p. 2 (Dkt. 184.) The proceedings were
5 initiated on February 14, 2006. The reexamination proceedings will determine if the '980
6 patent should be revoked or otherwise be declared invalid. On March 3, 2006, Defendant
7 filed a Motion to Stay Pending Reexamination. (Dkt. 184.) The Motion is fully briefed.

**Discussion**

Defendant argues that "if the PTO determines that the ['980] patent is invalid, there is no basis for the instant patent infringement suit." Motion to Stay, p. 5 (Dkt. 184.) Plaintiff argues that the motion should be denied because it "is a tit-for-tat, part of a long-running dispute between [Plaintiff], [Defendant] and Mr. Lacey over the marketing of head massaging devices." Response, p. 1 (Dkt. 187.) Plaintiff argues that the reexamination request is part of Defendant's effort "to evade its wholesale abdication of responsibility under this Court's scheduling orders by moving the dispute to a new forum, the PTO." Id. at 4. Further, Plaintiff argues, this case is four years old, discovery ended approximately two years ago, and delay will only advantage Defendant. Id. at 3. Defendant filed a Reply to the Motion arguing that, despite the delay it causes, reexamination will result in the ultimate simplification of issues when the '980 patent is declared invalid. Reply, p. 1 (Dkt. 188.)

<u>Relevant Law</u>

<u>Reexamination</u>

Reexamination is a procedure, added in 1980,[3] to provide a means whereby a patentee, or any member of the public, may ascertain whether a substantial new question of patentability can be raised against an issued patent on the basis of documentary prior art. ROBERT L. HARMON, PATENTS AND THE FEDERAL CIRCUIT, § 18.4 at 1067 (7th ed. 2005). At the conclusion of reexamination, "the Director will issue and publish a certificate

---

[3] 35 U.S.C. §§301-307.

- 4 -

canceling any claim of the patent finally determined to be unpatentable, confirming any claim of the patent determined to be patentable, and incorporating in the patent any proposed amended or new claim determined to be patentable." 35 U.S.C. §307. Sections 307 and 252 of Title 35 shield those who have infringed on a patent later to be held invalid. If, during reexamination, the holder of the patent makes substantive changes to the original claims of the patent so that it may pass reexamination, there is an irrebuttable presumption that the original claims were materially flawed. HARMON, *supra* at 1068. Therefore, "the statute relieves those who may have infringed the original claims from liability during the period before the claims are validated." Id. However, "[u]nless a claim granted or confirmed upon reexamination is identical to an original claim, the patent cannot be enforced against infringing activity that occurred before issuance of the reexamination certificate." Id. Thus, if a claim is not changed during reexamination, and is later validated, then an infringer may still be liable for previous infringement. Fortel Corp. v. Phone-Mate, Inc., 825 F.2d 1577, 1579-80 (Fed. Cir. 1987). When reexamined claims are substantively identical, the claims have a "'continuous effect' from the date of the original patent." Id. (internal citations omitted); *see also* Laitram Corp v. NEC Corp., 163 F.3d 1342, 1346-47 (Fed. Cir. 1998).

The Federal Circuit notes that "[o]ne purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding)." Gould v. Control Laser Corp., 705 F.2d 1340, 1342 (Fed. Cir. 1983).

The courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination. Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988). On the other hand, the Director does not have authority to stay reexamination proceedings pending the outcome of the district court infringement litigation. Id. Once the PTO undertakes to reexamine a patent, it shall do so with "special dispatch" (35 U.S.C. § 305) and cannot otherwise be compelled to cease reexamination.

<u>Effect on this case</u>

If this Court finds that Defendant infringed on Plaintiff's '980 patent and the PTO later holds that the '980 patent is invalid, Defendant might nevertheless be left with an outstanding court judgment. In <u>Standard Havens Products Inc. v. Gencor Industries, Inc.</u>, the court addressed this issue:

> Defendant argues that if the PTO's reexamination determination [that the patent is invalid], which is on appeal in a parallel action being prosecuted in another district, is affirmed in the form of a final judgment then the patent at issue in this case would be void ab initio, thereby removing the basis for this Court's judgment on the patent infringement. As a result, defendant urges this Court's judgment would become a nullity. Such a result would squarely confront the traditional concepts of res judicata, collateral estoppel, law of the case and finality, as understood by this Court. Indeed, defendant does not cite, and this Court could not find, a single controlling case that would compel such a result. In this case, this Court returned a plaintiff's verdict. The appellate court affirmed this Court as to the issues of patent validity and infringement. It remanded the matter to this Court solely for the purpose of determining the appropriate amount for damages. The issues of patent validity and infringement have been finally decided as to this case. This Court apprehends of no case or rule of law that holds that a final judgment in a separate lawsuit, in a separate jurisdiction, which may or may not be rendered at some undetermined point in the future would control and, indeed, void this Court's judgment in this case.

810 F.Supp. 1072, 1075-76 (W.D. Mo. 1993).

The Federal Circuit reversed in a non-precedential opinion:

> The district court incorrectly concluded that the reexamination decision can have no effect on this infringement suit even if the reexamination decision becomes final. As a matter of law, however, and as both parties agree, if the reexamination decision of unpatentability is upheld in the court action under 35 U.S.C. § 145 (1988), the injunction would thereby immediately become inoperative. In addition, if a final decision of unpatentability means the patent was void ab initio, then damages would also be precluded. Therefore, the injunction should have been stayed. Thus in either event, contrary to the assumption of the trial court, the reexamination proceeding "would control" the infringement suit.

<u>Standard Havens Prods. v. Gencor Indus.</u>, 27 U.S.P.Q.2d 1959, 1960 (Fed. Cir. 1993). In <u>Ultrak Inc. v. Radio Engineering Industries, Inc.</u>, in the Northern District of Texas, an accused infringer (the defendant) moved for a stay of proceedings. The defendant argued that even though the judgment was final, it should be stayed pending the reexamination. The accused infringer cited "two cases where courts have granted stays of litigation pending

1 resolution of reexamination proceedings – <u>Bausch & Lomb, Inc. v. Alcon</u>, 914 F.Supp. 951 (W.D.N.Y. 1996) and <u>Standard Havens Prods., Inc. v. Gencor Inds., Inc.</u>, 996 F.2d 1236 (Fed. Cir. 1993) (non-precedential opinion)." 52 U.S.P.Q.2d 1530 (N.D.Tex. 1999). The Texas court distinguished those cases: "However, in both cases the infringement litigation was then pending and the validity of the patents was directly in issue. Furthermore, Standard Havens, is a non-precedential opinion and only addressed the issue in *dicta*. In contrast, in the instant case there is no pending validity or infringement litigation . . . ." <u>Id.</u> In <u>Bausch & Lomb, Inc. v. Alcon</u>, the Western District of New York stayed court proceedings pending the PTO's reexamination of a patent, noting that "one possible scenario could result in irreparable harm to Alcon: if this Court finds that the '607 [patent] is not invalid and that Alcon has infringed it, and orders Alcon to pay damages to B & L for such infringement, then Alcon would have no ability to recover those damages if at a later date the PTO determined that the '607 patent is invalid." 914 F.Supp. at 952. The <u>Bausch & Lomb</u> court continued:

> Because a finding by this Court that the '607 patent is not invalid would not bind the PTO, the PTO could reach the opposite conclusion at any time thereafter. No only would such a scenario cause Alcon significant harm (as noted above) but it also would be a tremendous waste of the time and resources of all those involved in a trial before me. Such an outcome is unacceptable. Because the reexamination is to be conducted "with special dispatch" (35 U.S.C. §305), I find that a short stay of the proceedings before me will not greatly prejudice any party and will serve to promote judicial economy.

914 F.Supp. at 953.

In this case, the issue to be decided by the Court is whether Defendant infringed on Plaintiff's '980 patent and whether the '980 patent should otherwise be declared invalid.[4] If Plaintiff acquires a judgment against Defendant for infringement, and the '980 patent is subsequently held invalid by the PTO, there exists the possibility of irreparable harm to Defendant as noted above. The PTO is considered to have expertise in deciding issues of

---

[4] *See* Defendant's Answer / Counterclaim, p. 15 (Dkt. 13), Order on Motions for Summary Judgment (Dkt. 154.)

- 7 -

patentability and is in a better position to evaluate the validity of the '980 patent. Other courts have preferred to postpone making final decisions on infringement until the PTO rules on issues before it.[5] While this case is mature, the Court finds that Defendant has not abused the reexamination process in an attempt to delay trial proceedings. Because of the potential for irreparable injury to Defendant, and because of the PTO's expertise in the matter, the Court will grant the stay.

**Defendant TLT's Motion to Set Mandatory Settlement Conference**

On April 25, 2006, Defendant filed a Motion to Set Mandatory Settlement Conference. (Dkt. 197.) Defendant argues that despite the fact that there has already been a settlement conference in this case, a mandatory settlement conference should be ordered nevertheless. Defendant argues that because circumstances have changed since the last settlement conference, settlement would more likely be achieved in another settlement conference. Motion, p. 2 (Dkt. 197.) On May 10, 2006, Plaintiff filed its Response to the Motion. (Dkt. 199.) Plaintiff "does not oppose the request for a settlement conference by defendant if said request does not further delay a trial setting in this matter." Response, p. 1 (Dkt. 199.) Plaintiff stated further that "[t]he parties are presently engaged in serious settlement negotiations without the assistance of the Court." Id.

The Court will accommodate parties who are willing to engage in a settlement conference. If the parties wish to participate in a settlement conference, they are advised to file a Notice with the Court indicating as much, and a District or Magistrate Judge will be assigned for those purposes.

Accordingly,

**IT IS ORDERED GRANTING** Defendant's Motion to Stay Pending Reexamination. (Dkt. 184.) The parties are to advise the Court when reexamination proceedings have concluded.

---

[5] *See, e.g.*, Bausch & Lomb Inc., 914 F.Supp. at 953 (W.D.N.Y.,1996); Brown v. Shimano American, 18 U.S.P.Q.2d 1496, (C.D.Cal.1991); Grayling Indus. v. GPAC, Inc., 19 U.S.P.Q.2d 1872 (N.D.Ga.1991); Emhart Indus. v. Sankyo Seiki Mfg., 3 U.S.P.Q.2d 1889 (N.D.Ill.1987).

- 8 -

**IT IS FURTHER ORDERED DENYING** Defendant's Motion for Mandatory Settlement Conference. (Dkt. 197.)

**IT IS FURTHER ORDERED DENYING** Plaintiff's pending Motion in Limine without prejudice. (Dkt. 173.)

DATED this 21st day of July, 2006.

*Earl H. Carroll*
Earl H. Carroll
United States District Judge